191 F.2d 922
 BERCHEM et al.
v.
RECONSTRUCTION FINANCE CORP.
 No. 556.
 United States Emergency Court of Appeals.
 Heard at Philadelphia September 21, 1951.
 Decided October 19, 1951.
 Rehearing Denied November 2, 1951.
 
 Alexander Boskoff, Washington, D. C., for the complainant.
 George Arthur Fruit, Washington, D. C., (J. Gregory Bruce, Washington, D. C., on the brief), for the respondent.
 Before MARIS, Chief Judge, and MAGRUDER and McALLISTER, Judges.
 MARIS, Chief Judge.
 
 
 1
 The complainant, a slaughterer of meat, seeks review by this court of the action of the respondent in refusing to pay certain claims for livestock slaughter subsidy payments. The complainant operated as a slaughterer during the entire period of the livestock slaughter subsidy program. Under the regulations[1] providing for livestock slaughter subsidy payments the complainant filed claims for and received subsidy payments for periods subsequent to March, 1946. Complainant, however, did not file claims for subsidy payments for the years 1943, 1944 or 1945 or for January, February or March, 1946, until recently. When these claims were filed payment of them was refused by the respondent. On December 13, 1950, the complainant filed a protest against this action which protest was denied by the respondent by a letter dated May 2, 1951, from which it appears that the original refusal by the respondent to pay these claims was solely upon the ground that they had not been timely filed.
 
 
 2
 Livestock Slaughter Payments Regulation No. 3 provided in Section 7003.3(c) as follows: "Application for payments shall be filed after the last day of the accounting period in which the slaughter took place, and on or before the last day of the calendar month following the end of the accounting period in which the slaughter took place." Section 7003.10(a) of the same regulation provided in part: "Defense Supplies Corporation shall have the right to declare invalid, in whole or in part, any claim which does not meet the requirements of this regulation * * *."
 
 
 3
 Revised Livestock Slaughter Payments Regulation No. 3 included substantially the same provisions although the provision relating to the time of filing claims was transferred from paragraph (c) to paragraph (b) of Section 7003.3. By Amendment 3[2] to Revised Livestock Payments Regulation No. 3 the provisions of Section 7003.10(a) with respect to the right of Defense Supplies Corporation to declare invalid claims which did not meet the requirements of the regulation were transferred to Section 7003.9(e) of the regulation.
 
 
 4
 Defense Supplies Corporation was dissolved, effective July 1, 1945, and its functions were transferred to the respondent by the Act of June 30, 1945, c. 215, 59 Stat. 310, 15 U.S.C.A. § 611 note.
 
 
 5
 It will thus be seen that the regulations from the beginning expressly gave Defense Supplies Corporation and the respondent as its successor the right to declare claims for livestock slaughter subsidy payments invalid if they did not meet the requirements of the regulation, one of which was that the claims must have been filed before the last day of the next full calendar month following the end of the accounting period in which the slaughter for which subsidy was claimed took place. It is undisputed that the claims here in controversy were filed long after the expiration of the time thus limited by the regulations and that the respondent declared them invalid and refused to pay them solely on that ground. The complainant asserts, however, that the authority conferred upon the respondent and its predecessor by the regulations to invalidate claims which did not comply with the regulations with respect to the time of their filing did not impose the absolute duty to do so but that Section 7003.9(e) conferred upon the respondent a discretionary power to invalidate such claims which it might or might not exercise depending upon the circumstances.
 
 
 6
 The respondent concedes that the power to invalidate claims which was conferred upon it by the regulations was discretionary and that pursuant thereto it has in suitable cases accepted and paid claims for livestock slaughter subsidy payments which were filed after the expiration of the time fixed by the regulations. It argues, however, that such payments were made merely as a matter of grace and as such are no concern of this complainant who is bound by the terms of the regulations and the respondent's action thereunder with respect to his claims. Accordingly, says the respondent, the extent of the jurisdiction of this court to review the denial of the complainant's claims is limited to a determination whether the regulations by their terms authorize the respondent's action with respect thereto and the court may not review the respondent's exercise of discretion in determining that the complainant's claims should not as a matter of grace be accepted and paid even though filed out of time.
 
 
 7
 We do not construe the power of this court in the premises to be quite so narrowly limited. It is, of course, true that the court may not control the exercise of the discretion which has been vested in the respondent by the regulations except for such an abuse thereof as may fairly be characterized as arbitrary or capricious conduct. Silberschein v. United States, 1924, 266 U.S. 221, 225, 45 S.Ct. 69, L.Ed. 256; Illinois Packing Co. v. Snyder, Em. App. 1945, 151 F.2d 337, 339. But it is settled that an order of the respondent invalidating and denying a subsidy claim is an order under Section 2 of the Emergency Price Control Act of 1942 as amended, 50 U.S.C.A. Appendix, § 902, which is reviewable by this court. Illinois Packing Co. v. Bowles, Em.App. 1945, 147 F.2d 554, 558; Belle City Packing Co. v. Reconstruction Finance Corp., Em.App. 1948, 169 F.2d 413, 414; Merchants Packing Co. v. Reconstruction Finance Corp., Em.App. 1949, 176 F.2d 908, 912. And upon such review it is the duty of the court under Section 204(b) of the act to determine not only whether or not the order is in accordance with law but also whether or not it is arbitrary or capricious. Moreover this court has repeatedly held that the subsidy program was complementary to the price control program in the sense that the livestock slaughter subsidy was provided in part at least to render valid the maximum prices imposed upon the slaughterers which otherwise might have been invalid as generally unfair and inequitable. Illinois Packing Co. v. Snyder, Em.App. 1945, 151 F.2d 337, 339; Earl C. Gibbs, Inc. v. Defense Supplies Corporation, Em.App. 1945, 155 F.2d 525, 526, certiorari denied, 329 U.S. 737, 67 S.Ct. 51, 91 L.Ed. 637; Earl C. Gibbs, Inc. v. Reconstruction Finance Corp., Em.App. 1948, 169 F.2d 654, 656; Evergreen Meat Co. v. Reconstruction Finance Corp., Em.App. 1951, 188 F.2d 368, 370. The complainant is, therefore. not in the position of one who seeks a mere gratuity or bounty. Accordingly if it can be shown that the respondent has established standards for the exercise of its discretionary power to invalidate subsidy claims untimely filed and that in the present case it has clearly departed from those standards in invalidating the complainant's claims the court might well be required to characterize such action as arbitrary or capricious and to set it aside. It must, therefore, be ascertained whether such standards have been established.
 
 
 8
 As has been said, the respondent concedes that it has in the past in suitable cases accepted and paid subsidy claims which were filed after the time limited by the regulations. Indeed on June 14, 1944, respondent's predecessor Defense Supplies Corporation issued to its agents throughout the country Bulletin No. 175, paragraph A.2 of which was in part as follows: "Claims for months in 1943 should not be accepted if filed after July 31, 1944. Claims for January, February, March and April, 1944, should not be accepted if filed after August 31, 1944. Claims for May and June, 1944, should not be accepted if filed after September 30, 1944. Claims for July 1944 and future months should not be accepted if filed more than three months after the end of the accounting period covered by the claim. Any claim filed later than a month after the end of the period it covers must be accompanied by an explanation of the delay in filing. Agents are authorized to be lenient in accepting claims for periods after June 1944 which are filed no more than two months late, but in each case where a late claim is accepted, the applicant should be notified that in the future his claims must come in within a month. If an applicant has been so notified, his future claims should not be accepted, unless filed within a month after the end of period covered. In any case where Agents feel this works an undue hardship, a full report with recommendations should be sent to the Washington Office, Domestic Purchases Division."
 
 
 9
 Bulletin No. 227, which was sent out by the respondent to all its agency managers on January 18, 1946, contained the following statements:
 
 
 10
 "In view of the imminent termination of the program it is important to have applicants filing claims promptly. A warning should be sent out to all applicants which is unequivocal and not susceptible of misinterpretation that beginning with February 1946 no claims will be accepted for any reason if filed more than a month after the period covered by the claim. We suggest that this warning be sent out with the February mailing of forms, attached to the forms so that it cannot possibly be overlooked. Agents are authorized to refuse any claims for February 1946 and subsequent months which are filed after the month's deadline. In any case in which a claim is filed late, in which the Loan Agency Manager is satisfied with the explanation of the delay in filing, it may be referred to this office with a recommendation as to acceptance. Attention is called to the fact that present bulletin instructions require that any claim which is refused for any reason must be reported to this office. This may be done by transmitting a carbon copy of the letter of refusal to the applicant to this office without a covering letter. Please note also that if claims are refused for payment because of late filing they should be refused for payment the first time filed, and should not be returned for correction and then refused for payment after they have been corrected. If a claim is returned for correction this operates as acceptance of the claim and the claim cannot subsequently be refused for late filing unless the correction itself is late in being filed.
 
 
 11
 "Any case in which an applicant files a claim, or makes inquiry as to filing a claim, more than two months after the end of the period covered by the claim (one month late) should be referred to the appropriate Regional Enforcement Executive of OPA. If such a late claim is filed, it must, of course, first be held for a decision as to whether the lateness should be waived. If the Agency Manager in his discretion refuses the claim for late filing, the claims should be returned to the applicant and, of course, this office as well as OPA, so notified. If the lateness is waived by RFC on the recommendation of the Agency Manager, the claim should be held in the Agency 30 days pending advice from OPA as to possible violations. If no such advice is received from OPA within the 30 days, the claim should be processed for payment."
 
 
 12
 Finally in Bulletin No. 253 issued November 26, 1946, respondent notified its agency managers with respect to October 1946 beef subsidy claims as follows: "It is still true that claims must be filed with RFC by November 30, 1946, but this ruling as to OPA reports may create confusion on this point. Loan Agency Managers are authorized in their discretion to accept claims filed prior to December 31, 1946, if the explanation of the delay is reasonable."
 
 
 13
 From the foregoing bulletins it appears that the respondent did exercise the discretion conferred upon it by the regulations to the extent of validating and paying late claims provided they were filed within the times specified in the bulletins. It also clearly appears therefrom that the respondent was willing to accept and pay subsidy claims filed after the dates fixed in the bulletins if a reasonable explanation was given for the claimant's failure to file the claim on time and if it appeared that undue hardship would result to the claimant if the claim was not paid. These then were the standards which the respondent laid down for the exercise of its discretion in invalidating subsidy claims filed out of time. We accordingly turn to the facts of the present case in order to determine whether they so clearly established a reasonable explanation for the complainant's failure to file his claims on time and such undue hardship that will result to him from their denial as would justify us to find that the denial of the claims by the respondent was an arbitrary and capricious act on its part.
 
 
 14
 The complainant's statement of reasons for his late filing is contained in the letter which he wrote to his counsel shortly after his protest was filed and which his counsel transmitted to the respondent. The letter is unsworn. In it the complainant stated he was under the impression that the subsidy was only being paid to farmers and it was not until his son was discharged from service in the armed forces late in 1945 that complainant learned that he was entitled to slaughter subsidy. The complainant further stated that subsequently his son applied for subsidy payments for succeeding months and that these were paid to him. He also stated that an employee of the Office of Price Administration told him that any right to claim subsidy on his part had been forfeited. This allegedly had happened early in the program.
 
 
 15
 We cannot say that these facts, if they were properly proved, would establish so clearly a reasonable excuse for the late filing of the claims here in controversy as to justify this court in holding the respondent's rejection of them to be arbitrary or capricious. Moreover there is no evidence whatever in the record that the denial of the complainant's claims will work an undue hardship on him.
 
 
 16
 We conclude, therefore, that the respondent's action in invalidating the complainant's claims was in accord with the regulations and was neither arbitrary nor capricious.
 
 
 17
 A judgment will be entered dismissing the complaint.
 
 
 
 Notes:
 
 
 [1]
 Regulation No. 3, effective June 7, 1943, 8 F.R. 10826; Revised Regulation No. 3, effective January 19, 1945, 10 F.R. 4241
 
 
 [2]
 10 F.R. 8073, effective May 5, 1945