Whitaker, Judge,
delivered the opinion of the court:[1]
On January 10, 1955, a bill, H.E. 1901, was introduced in the House to pay plaintiff $38,175.41 for livestock slaughter subsidy for the period June 7, 1943 to December 31, 1943. The bill was referred to this court[2] by way of a resolution, H. Ees. 230, agreed to by the House of Eepre-sentatives on May 17, 1955. By this resolution the court is requested to report to the House as to the “nature and character of the demand, as a claim legal and equitable, against the United States, and the amount, if any, legally or equitably due from the United States to the claimant.”
After defendant had answered plaintiff’s petition in this court, the case was referred to a Trial Commissioner for a report on the facts, which report is now before the court. Neither plaintiff nor defendant has taken exception to it. The report contains a full statement of the facts, which we adopt as findings of fact of the court. In summary, they are as follows:
Plaintiff, a family-owned and operated corporation, operates a slaughterhouse which purchases livestock, slaughters it, and sells the meat at retail and wholesale. Plaintiff’s claim is based upon Eegulation No. 3, as amended, of the Defense Supplies Corporation, a wartime subsidiary of the Eeconstruction Finance Corporation (hereinafter, E.F.C.), which provided for subsidy payments to slaughterers of livestock, in order to compensate them for the rollback of prices as required by the regulations of the Office of Price Admin *95 istration (hereinafter, O.P.A.). Eligibility for the subsidy was conditioned upon the applicant having a valid and un-revoked or suspended permit as a slaughterer. The regulation required that applications for such payments should be filed after the last day of the accounting period in which the slaughter took place, and before the last day of the calendar month following the end of the accounting period in which the slaughter took place.[3] It also provided for the invalidation of any claim filed, when, in the judgment of the War Food Administrator and the Price Administrator, the applicant had wilfully violated any regulation of their respective agencies applicable to the sale or distribution of meat. The subsidy began on June 7, 1943.
Although plaintiff and its officers were aware of the regulation from its inception, they did not claim any subsidy for the period June 7, 1943 to December 31, 1943, but began claiming it for the period beginning January 1, 1944, from which time they regularly claimed and were paid the subsidy. In this action plaintiff is claiming it from June 7,1943 through December 31, 1943.
No application was filed by plaintiff for the period in question until 1949, about five and a half years after the close of the period in question. The Reconstruction Finance Corporation, successor to the Defense Supplies Corporation, rejected the claim as not timely filed.
Plaintiff then filed a complaint in the United States Emergency Court of Appeals, protesting the R,.F.C.’s refusal to pay the subsidy for the 1943 period. That court held that the “complainant has failed to show facts which so clearly establish a reasonable excuse for failure to file its claim on time and such undue hardship resulting from their nonpayment as would stamp the respondent’s refusal to accept and pay the claims out of time as arbitrary or capricious.” Plaintiff’s complaint was dismissed.
*96 We are of the opinion that the decision of the Emergency Court of Appeals is res judicata and, hence, plaintiff has no legal cause of action. The Emergency Court of Appeals was created by the Act of January 80, 1942, 56 Stat. 31, (which, as amended, is carried into the Code as Title 50 App. section 924) as “a court of the United States.” It is provided that it “shall have the powers of a district court with respect to the jurisdiction conferred on it * * The question presented to it was well within its jurisdiction and, hence its decision is binding upon us.
Nor has plaintiff an equitable claim against the United States. We can find nothing in the facts to show that the R.F.C. was not fully justified in rejecting plaintiff’s claim. It was filed long after the time fixed by the regulation, the validity of which has been judicially tested and approved in several decisions. Plaintiff has offered no legitimate excuse for not having done so. The Trial Commissioner has found that “The evidence establishes that the failure of the plaintiff to request the subsidy during the claim period was plaintiff’s deliberate choice and was not an oversight.”
The Trial Commissioner has also found that plaintiff and his counsel, immediately before the period in question, had a number of conferences with O.P.A. officials, who explained the various O.P.A. regulations; but, notwithstanding this, the O.P.A. found it necessary, on March 20, 1943, to get an injunction from the United States District Court restraining plaintiff from violating the O.P.A. regulations.
Later, on January 20, 1944,. plaintiff’s vice president filed an affidavit consenting to the issuance of an order suspending plaintiff’s right to buy, sell, or otherwise deal in all rationed commodities for two weeks, and such order was issued. This was done because of plaintiff’s violations of the regulations.
On August 28, 1944, the United States District Court issued an order citing plaintiff to show cause why he should not be adjudged in contempt for violation of the injunction previously issued. Later, an order was entered discharging the rule upon the payment of $5,000 by plaintiff.
In view of plaintiff’s repeated violations of O.P.A. regulations, we can hardly credit the protestations of its president that it was actuated by patriotic motives in not applying *97 for the subsidy; it would rather seem to have been a case of an exercise of sound discretion, of following the adage of “letting sleeping dogs lie.”
After a number of requests for permission to file, out of time, a claim for the subsidy from June 7,1943 to December 31, 1943, the E.F.C. wrote plaintiff on January 4, 1950, calling this to plaintiff’s attention:
A notice was sent to this firm and all other slaughterers during June 1944 that no 1943 claims would be accepted after July 31,1944. A later notice was sent to the firm giving an unequivocal warning of our time of filing requirement and that no claims would be accepted for any reason if filed more than a month after the period covered by the claim.
In a number of similar cases, it has been our consistent policy to refuse to accept late filed claims and it would be unfair to depart from that policy in this instance. Accordingly, it is with regret that I feel I must inform you that we cannot pay the 1943 claims of the Galen H. Clark Packing Co., Inc.
However, the E.F.C. seems to have finally given plaintiff oral permission to file a claim, and this was done on August 15, 1950. But, on consideration of the claim, the E.F.C. wrote plaintiff on September 20,1950, in part, as follows:
The subsidy claims for the period June 7 through December 31, 1943 are time-barred by the provisions of the regulation requiring claims to be filed on or before the last day of the month following the accounting period during which the slaughter took place. This limitation is being strictly adhered to. The circumstances set forth in the slaughterer’s claim could not justify an exception to this policy.
#
You are accordingly advised that both items of claim are denied.
This was reaffirmed by letter of November 14, 1950, and, later, the Emergency Court of Appeals dismissed plaintiff’s complaint.
In our opinion plaintiff has not shown that it is equitably entitled to payment of the subsidy claimed.
This opinion and the findings of fact will be certified to the House of Eepresentatives in accordance with H. Ees. 230.
*98 It is so ordered.
Davis, Judge; Dukfee, Judge; and Laramoke, Judge, concur.
JoNes, Chief Judge,
took no part in the consideration and decision of this case.
FINDINGS OF FACT
The court, having considered the evidence, the report of Trial Commissioner Richard Arens, and the briefs of counsel, makes findings of fact as follows:
1. On January 10,1955, there was introduced in the House of Representatives and referred to the Committee on the Judiciary a bill, H.R. 1901, for the relief of Galen H. Clark Packing Company, Incorporated, the body of which bill reads as follows:
* * * That the Secretary of the Treasury be, and he is hereby, authorized and directed to pay, out of any money in the Treasury not otherwise appropriated, to Galen H. Clark Packing Company, Incorporated, of rural delivery numbered 1, Paxmos, Pennsylvania, the sum of $38,175.41. Such sum shall be in full settlement of all claims of Galen H. Clark Packing Company, Incorporated, against the United States for livestock slaughter subsidy, being the total amount of the monthly payments allegedly due and payable under the statute and regulations for each month or part thereof during the period June 7, 1943, to and including December 31, 1943: Provided, That no part of the amount appropriated in this Act in excess of 10 per centum thereof shall be paid or delivered to or received by any agent or attorney on account of services rendered in connection with this claim, and the same shall be unlawful, any contract to the contrary notwithstanding. Any person violating the provisions of this Act shall be deemed guilty of a misdemeanor and upon conviction thereof shall be fined in any sum not exceeding $1,000.
2. On May 3, 1955, there was submitted to the Plouse of Representatives and referred to the Committee on the Judiciary a resolution, H. Res. 230, which reads as follows:
Resolved, That the bill (H.R. 1901) entitled “A bill for the relief of Galen H. Clark Packing Company, Incorporated”, together with all accompanying papers, is hereby referred to the United States Court of Claims pursuant to sections 1492 and 2509 of title 28, United *99 States Code; and said court shall proceed expeditiously with the same in accordance with the provisions of said sections and report to the House, at the earliest practicable date, giving such findings of fact and conclusions thereon as shall be sufficient to inform the Congress of the nature and character of the demand, as a claim legal and equitable, against the United States, and the amount, if any, legally or equitably due from the United States to the claimant.
3. On May 9, 1955, the House Committee on the Judiciary in Report No. 520 reported favorably on H. Res. 230, which was agreed to by the House of Representatives on May 17, 1955.
4. Plaintiff is a family owned and operated corporation organized in 1938 under the laws of Pennsylvania, with its principal place of business at R.D. 1, Paxinos, Northumber-land County, Pennsylvania. At all material times plaintiff was engaged in the purchase and slaughter of livestock and the sale of the meat.
5. Plaintiff’s claim is based upon Regulation No. 3, as amended, of the Defense Supplies Corporation, a wartime subsidiary of the Reconstruction Finance Corporation, to which the Reconstruction Finance Corporation was successor. Under the provisions of Regulation No. 3, subsidy payments were made to slaughterers of livestock, in order to compensate them for the rollback of prices as required by the regulations of the Office of Price Administration. Regulation No. 3, which was issued on June 16, 1943, provided in part as follows:
Section 2. Persons Eligible to Apply for Payment.
Any person who has a permit or registration and whose permit or registration has not been suspended or revoked and who slaughters 4,000 pounds or more of livestock, live weight, m any one establishment in any one calendar month after May, 1943, may file an application for payment on account of such livestock slaughtered in each such establishment on and after June 7, 1943. * * *
Section 3. Filing Application for Payment.
* * * * *
(c) Time of Filing. Application for payments shall be filed after the last day of the accounting period in *100 which the slaughter took place, and before the last day of the calendar month following the end of the accounting period in which the slaughter took place.
(d) Form of Application.
(1) In General. All applications for payments shall be filed in triplicate on forms specified for the applicant’s class and approved by the Defense Supplies Corporation and all information therein provided for shall be supplied. Only one application can be filed on account of the livestock slaughtered in one establishment during an accounting period, and an application cannot cover livestock slaughtered during a period longer than the accounting period. A separate application shall be filed for each establishment of the applicant. A separate application shall be filed on account of the livestock slaughtered on and after June 7, 1943, and before the beginning of the applicant’s next accounting period.
*****
(c) Inspection of Records. Every applicant shall preserve for inspection for a period of not less than two years after the date of filing an application books, records and other documents, which furnish information in support of such application and Defense Supplies Corporation or its designated agent shall have the right at any time to make such examinations and audits of the books, records and other documents as may be nee-essary to ascertain the facts set forth in such application or as may be required by Defense Supplies Corporation.
(d) Failure to Comply. The Defense Supplies Corporation shall have the right to declare invalid any claim of an applicant who has failed to comply with the requirements of this section.
Section 5. Payment of Claims.
* * * • * *
(b) Base of Payment. Payments will be made on the live weight of the livestock slaughtered by an applicant during the accounting period covered by his application subject to the following qualifications:
$ ‡ $ *
(d) Terms of Payment. Payments will be made monthly upon preliminary approval of the claim. Preliminary approval and payment of claims shall not constitute final acceptance of the validity or amount of the claim. * * *
*101 Section 10. Right to Declare Claims Invalid.
(a) Compliance with Other Regulations. Defense Supplies Corporation, shall have the right to declare invalid, in whole or in part, any claim which does not meet the requirements of this regulation, and any claim filed by an applicant who, in the judgment of the War Food Administrator or the Price Administrator has wilfully violated any regulation of their respective agencies applicable to livestock slaughter or the sale or distribution of meat.
$ $ ‡ ‡ $
Section 12. Termination.
This regulation may be terminated at any time after ten (10) days notice. Such termination shall not preclude the filing of applications on account of livestock slaughtered on or before the date of termination for which the applicant would otherwise have been eligible. Such applications must be filed within thirty (30) days after the date of termination.
H* $ $ $ $
Plaintiff’s claim is for livestock slaughter subsidy payments for the period (hereinafter referred to as the claim period) beginning June 7, 1943 and ending December 31, 1943. As hereinafter set forth, plaintiff did not request subsidy payments for the claim period until 1949, and the payments were refused.
6. Galen H. Clark is and was at all material times president and treasurer of plaintiff corporation. His duties consisted of general supervision of the business, purchasing livestock for slaughter, selling the meat, and the customary duties of treasurer, including banking and signing of checks. Mr. Galen H. Clark’s daughter, Mrs. Winifred Ensinger, assisted by her brother, Allen B. Clark, who was secretary of plaintiff corporation, kept the books of the business. Her duties included recording of purchases of livestock and preparing of subsidy returns. Plaintiff’s tax returns were prepared by an accountant.
7. Plaintiff’s officials were acquainted with the O.P.A. regulations during the time in which they were applicable to plaintiff’s operations, but experienced difficulty in construing and understanding the regulations. The regulations in- *102 eluded not only limitations on prices which, could be charged but also limitations on the number of livestock which could be slaughtered in any one month. Plaintiff’s slaughter quota was 200 head a month. Plaintiff’s officials and counsel had a number of conferences with O.P.A. representatives who explained the various O.P.A. regulations. A number of these conferences were held during or shortly before the claim period (June 7, 1943 to December 31, 1943).
8. On March 20,1943, an action was instituted in the District Court of the United States for the Middle District of Pennsylvania by the Administrator of the Office of Price Administration to enjoin plaintiff and its officers from violating an order restricting the quantity of cattle which could be slaughtered by plaintiff. Thereafter certain routine procedures ensued and on April 7, 1943, a consent order was entered enjoining and restraining the plaintiff and its officers from the violation of O.P.A. regulations, and especially the order restricting the quantity of cattle which could be slaughtered by plaintiff.
9. Under date of January 20, 1944, the vice president of plaintiff executed an affidavit on behalf of plaintiff in a proceeding of the Office of Price Administration, in which the plaintiff was respondent, to determine whether a suspension order should be issued, which affidavit reads in part as follows:
That unintentionally and with no attempt to violate any rule or law and because of inability to secure competent assistance in ascertaining the correct price—
Respondent engaged in violations of Ration Order No. 16 and General Ration Order No. 8 in that it sold Pork, and Beef, and Veal, at prices above those allowed under Maximum Price Regulations No. 148 and No. 169.
Respondent, having been informed that it has the right to a hearing, hereby waives the service of a Notice of Hearing, the taking of testimony or evidence and the making of findings of fact or conclusions of law by the Hearing Commissioner in this matter, pursuant to Procedural Regulation No. 4, and expressly consents that on the basis of this consent affidavit if approved by the Hearing Commissioner for Region II the subjoined suspension order may be entered forthwith without further notice suspending the respondent’s right to buy, sell, transfer, receive, accept delivery of, or otherwise deal *103 in, directly or indirectly, all rationed commodities as defined in Nation Order No. 16, for a period of two weeks commencing at 12:01 a.m. on the 27th day of February, 1944 and expiring at 12:01 a.m. on the 13th day of March, 1944.
This consent affidavit has been made by respondent voluntarily without threat, duress or promise of reward or immunity and does not in any way limit or restrict the right of the Office of Price Administration to request the institution of criminal proceedings or to use any other enforcement measures with respect to respondent.
Under date of January 21, 1944, a Suspension Order and a Notice were issued in the above proceeding by the Acting Chief Hearing Commissioner of Region II of the Office of Price Administration, which read in pertinent part as follows:
SUSPENSION ORDER
Upon the basis of the annexed affidavit, it is hereby determined that Galen PI. Clark Packing Company, a Corporation, located at Paxinos, R.D. 1, Northumber-land County, Pennsylvania, hereinafter called the Respondent, a dealer of rationed foods as defined in Ration Order No. 16, has violated Ration Order No. 16 and General Ration Order No. 8.
It is therefore ordered:
During the period in which this Suspension Order shall be in effect:
(1) Respondent shall not accept any deliveries or transfers of, or in any manner, directly or indirectly, receive from any source, any Beef, Pork or Veal.
(2) Respondent shall not sell, transfer or deliver or otherwise trade or deal in any of the said rationed commodities.
(3) No person shall in any manner, directly or indirectly, transfer or deliver any of the said rationed commodities, to Respondent for resale.
(4) Respondent shall post and keep posted at said premises during the period that this Suspension Order is in effect, the following notice furnished by the Office of Price Administration:
NOTICE
BY ORDER OP THE
OPPICE OP PRICE ADMINISTRATION
Galen H. Clark Packing Company (a Corporation), R.D. #1, Paxinos, Pa. has been suspended prom buy *104 ing, selling OR dealing in Meats, Fats, Fish and Cheese, RATIONED COMMODITY OR COMMODITIES AS DEFINED IN ration order no.-for period from February 27, 1944, to March 13,1944
This Suspension Order shall become effective 12:01 a.m. February 27, 1944 and shall remain in effect until 12:01 a.m. March 13,1944.
10. On August 28,1944, a petition was filed in the United States District Court for the Middle District of Pennsylvania by the Administrator of the Office of Price Administration for a rule to show cause why the plaintiff and its officers should not be adjudged in contempt for violation of the Court’s order of April 7, 1943; and on the same date the order granting the rule to show cause was issued, returnable September 12,1944. Certain intervening routine procedures ensued and on May 18,1945, the Administrator of the Office of Price Administration, acting through the District Enforcement Attorney, filed in the aforementioned court a Praecipe for Discontinuance of Suit, the body of which reads as follows:
And now, comes the plaintiff by his attorney, Wayne R. Bettner, District Enforcement Attorney, and says that the parties have agreed to a money settlement in the above captioned case, and therefore the plaintiff moves that all further proceedings therein be dismissed.
Thereafter the suit was dismissed. The evidence does not reveal the recitals or provisions of the settlement except that the amount of money paid by plaintiff in settlement was $5,000.
11. During the claim period plaintiff’s business was good and it was able to sell all of the meat which it had slaughtered. The evidence establishes that the failure of the plaintiff to request the subsidy during the claim period was plaintiff’s deliberate choice and was not an oversight. At the trial plaintiff’s president testified that plaintiff did not ask for the subsidy during the claim period because “We didn’t want to take it if we didn’t have to”; but that plaintiff “asked for it later on when things got a little worse.” Plaintiff’s president had also told one of the attorneys for the Reconstruction Finance Corporation during a conference in Washington, D.C., subsequent to the claim period, that plain *105 tiff’s delay in filing for the subsidy payments for the claim period was because during 1943 the subsidy payments were not needed, that a war was on, that he was patriotic, and decided not to ask the Government for such payments.
12. Beginning in 1944 plaintiff began to apply for the meat subsidies for the then current periods and continued to do so throughout the time that the subsidies were offered to meat slaughterers (until price controls were lifted on October 15, 1946). The applications were prepared by Mrs. Winifred Ensinger and her brother, Allen B. Clark, and the subsidies were paid without difficulty.
13. Early in 1949 plaintiff’s business was not good and plaintiff’s accountant suggested to plaintiff’s president that application be made for subsidy payments for the claim period. Whereupon, by letter of May 18, 1949, plaintiff’s president requested consideration by the Reconstruction Finance Corporation of subsidy payments for the claim period, and was advised by responding letter of May 19, 1949, that R.F.C. would communicate with plaintiff’s president after an examination of the R.F.C. records in the case had been made.
14. On or about June 1,1949, plaintiff’s attorney conferred with counsel for the Reconstruction Finance Corporation in Philadelphia respecting subsidy payments for the claim period, at which time plaintiff’s attorney was referred to the R.F.C. office in Washington; and about the last week of June 1949 plaintiff’s attorney conferred with the chief of the Office of War Activity Liquidation of the R.F.C. who refused permission for plaintiff to file written claims for the claim period on the ground that the applications had not been filed within one month after entitlement.
15. A letter dated October 31,1949, addressed to the Loan Agency, Reconstruction Finance Corporation, in Philadelphia, from plaintiff’s attorney, reads in part as follows:
Our clients and ourselves regret exceedingly that through a misunderstanding the proper forms were not filed in order to secure the subsidies to which we understand they were entitled under the applicable acts in effect, for the period 1942, 1943 and 1944 to December of 1944, and no subsidies therefor were received by them for that period. We understand that certain subsidies were paid after that date to our client.
*106 We would appreciate very much, securing permission for our client to file whatever forms you require, so that any amounts due our client for that period under the applicable laws may be paid.
A responding letter of November 2,1949, advised that in all probability the matter would be referred to the Washington, D.C., office of E.F.C.
16. By letter dated November 29, 1949, addressed to the Loan Agency, Beconstruction Finance Corporation, in Philadelphia, plaintiff’s attorney again requested permission to file application for subsidy payments for the claim period. The letter reads in part as follows:
I enclose herein an affidavit signed by Galen H. Clark, the President, on behalf of our client, which explains the situation during that period at the beginning of the o.p.a. The affidavit is submitted as we understand that there was some question about whether what was done during that period would be considered a violation of the o.p.a. regulations, and we wanted your office to know that everything done during that period was considered lawful at the time.
The affidavit of Galen H. Clark reads in part as follows:
galbN h. CLARK, of r.d. no. 1, Paxinos, Pennsylvania, being duly sworn according to law, deposes and states that he is President of the Galen H. Clark Packing Company, Inc., of Paxinos, Pennsylvania. That he was President of said company from June 1943 to December 1943 inclusive, and had full charge of the running of said company during that period.
That during said period the cattle was slaughtered and delivered and billed to the customers by the whole side of beef.
That during said period of time the deponent and his attorney, Bobert Fortney, Esq., kept in constant touch with the o.p.a. office and the o.p.a. attorneys in Williams-port, Pennsylvania, in order to find out just what should be done and to comply with the o.p.a. interpretation of their regulations, and during this period of time everything was done by this deponent which was believed to be lawful and in accordance with the law and the interpretation of the o.p.a. regulations which were being made at that time.
Deponent further states that no subsidies were received by this company for the period from June to December 1943 inclusive.
*107 wherefore deponent respectfully suggests that he is equitably and legally entitled to the subsidies for the period from June to December 1943 inclusive, which remain unpaid.
17. A letter dated January 4,1950, addressed to plaintiff’s attorney from the chief of the Contract Liquidation Branch of the R.F.C. in Washington, D.C., reads in part as follows:
Our record indicates that the Galen H. Clark Packing Co., Inc. has never filed subsidy claims for the 1943 periods and apparently had not inquired as to the payments until your letter of November 29, 1949. As you probably know, the subsidy program terminated when price controls were lifted on October 15, 1946. It appears, therefore, that this firm took no action in regard to its 1943 claims until 6 years after its slaughter and more than 3 years after the termination of the program.
The livestock slaughter subsidy was paid under the provision of Regulation # 3 of Reconstruction Finance Corporation. One of the provisions required filing of subsidy claims on or before the last day of the month following the accounting period during which the slaughter took place.
A notice was sent to this firm and all other slaughterers during June 1944 that no 1943 claims would be accepted after July 31, 1944. A later notice was sent to the firm giving an unequivocal warning of our time of filing requirement and that no claims would be accepted for any reason if filed more than a month after the period covered by the claim.
In a number of similar cases, it has been our consistent policy to refuse to accept late filed claims and it would be unfair to depart from that policy in this instance. Accordingly, it is with regret that I feel I must inform you that we cannot pay the 1943 claims of the Galen H. Clark Packing Co., Inc.
18. By letter dated January 26, 1950, plaintiff’s attorney requested a conference with the chief of the Contract Liquidation Branch of the R.F.C. in Washington, D.C. After several exchanges of correspondence the conference was held in Washington, D.C., on June 22,1950.
19. A letter dated August 15,1950, addressed to the chief of the Contract Liquidation Branch of the R.F.C. from plaintiff’s attorney, reads in part as follows:
In accordance with the permission which you granted my client, the Galen H. Clark Packing Company, Inc., *108 when I was down to see you in Washington on June 22, 1950, to file their subsidy payment claim for 1948 and their claim for a refund of one-half of the $7500.00 fine paid, I have prepared the claim for livestock slaughter subsidy for the period from June 7, 1943 to December 31, 1943 and enclose the same herein in the amount of $38,175.41.
I also enclose the claim for refund of one-half of the assessment of $7500.00, viz., claim for refund of $3750.00.
I trust that these claims are prepared in proper form with the proper vouchers. If there is anything further you wish, we will be glad to furnish it, and if you need extra copies of these claims we will be glad to send an extra copy of each to you.
20. On September 14, 1950, the Reconstruction Finance Corporation issued Regulation No. 11 respecting claims arising under food subsidy programs, which provided in part as follows:
Section 4.1 Purpose.
The last period in respect of which meat subsidies were payable was the October 1946 subsidy period. All other food subsidy programs were earlier terminated. All claims for food subsidies heretofore presented have received administrative consideration. No new claims could, under the applicable regulations, be filed at this late date. It is, therefore, appropriate and administratively necessary to complete these programs by requiring all unsettled items to be formally presented so that they may be finally disposed of.
Section 4.2 Filing of Protests.
The refusal or failure of Reconstruction Finance Corporation by the date of issuance of this regulation to make payment of, or to give appropriate credit for, claimed food subsidies shall be deemed an order denying such payment or credit. No protest against an order denying such payment or credit, in whole or in part, will be considered unless filed with Reconstruction Finance Corporation on or before December 15,1950. The failure to file a protest on or before such date will be presumed conclusively to constitute an abandonment of any claim to such payment or credit.
Section 4.3 Applicability.
This regulation shall apply to claims arising under Regulation No. 2 of Defense Supplies Corporation (butter subsidies); Regulation No. 3, as amended, of *109 Defense Supplies Corporation and Revised Regulation No. 3, as amended, and Regulation No. 10 of Reconstruction Finance Corporation (meat subsidies); and Regulation No. 4, as amended, of Defense Supplies Corporation, and Regulation No. 9 of Reconstruction Finance Corporation (flour subsidies). This regulation shall not apply to those claims on which completion of administrative action has been suspended because of referral to the Department of Justice.
This regulation shall become effective upon issuance.
21. The body of a letter dated September 20, 1950, addressed to plaintiff’s attorney from the chief of the Contract Liquidation Branch of the R.F.C. in Washington, D.C., reads as follows:
This is with reference to your letter of August 15, 1950 presenting, on behalf of the captioned slaughterer, subsidy claims for the period June 7 through December 31, 1943, and a claim for refund of one-half of a $7,500 payment made to the Office of Price Administration in settlement of an action instituted for violations of the Emergency Price Control Act. Your letter and its enclosures were written in pursuance of our discussion of the matter on June 22, 1950, at which time we reviewed both items of claim with you in some detail and advised you that we would give you formal rulings on both if they were submitted in writing.
The subsidy claims for the period June 7 through December 31, 1943 are time-barred by the provisions of the regulation requiring claims to be filed on or before the last day of the month following the accounting period during which the slaughter took place. This limitation is being strictly adhered to. The circumstances set forth m the slaughterer’s claim could not justify an exception to this policy.
The slaughterer’s claim for a refund of one-half of the $7,500 payment made to the Office of Price Administration in settlement of an action instituted for violations of the Emergency Price Control Act is apparently based on the fact that the sum of $3,750 was paid by opa’s New York Regional Office to tins Corporation as “its share of said claim” against the slaughterer.
Under the decision of the Gibbs case this Corporation has refunded to slaughterers so-called “dollar-for-dollar” deductions made from payments on their claims where there is no evidence of wilful violation of opa’s regulations. In this case however, no deduction was *110 made by this Corporation, on the dollar-for-dollar principle and the circumstances under which opa’s New York Regional Office transferred the $8,750 to this Corporation do not, in our opinion, fall within either the letter or the spirit of the Gibbs case.
You are accordingly advised that both items of claim are denied.
22. By letter dated October 24,1950, addressed to the Reconstruction Finance Corporation, Washington, D.C., Attention: Mr. Leo Nielson, Secretary, plaintiff’s attorney protested the refusal of the R.F.C. to grant the meat subsidy for the claim period to plaintiff, and requested that the Directors of the R.F.C. review the order of the chief of the Contract Liquidation Branch refusing payments.
23. A letter dated November 14, 1950, addressed to plaintiff’s attorney from the Secretary of the Reconstruction Finance Corporation, reads in part as follows:
During June 1943 the Office of Price Administration established ceiling prices on meat sold at wholesale which required most slaughterers to roll-back their prices by approximately 10%. To compensate for the roll-back the Reconstruction Finance Corporation was directed to pay subsidy on the slaughter of livestock. The subsidy was paid under the provisions of Regulation #3 of rfc. One of the provisions required filing of subsidy claims on or before the last day of the month following the accounting period during which the slaughter took place.
Our record indicates that the applicant filed claims for the 1944 and subsequent periods but apparently did not inquire as to the 1943 payments until your letter of November 29, 1949. Considerable publicity was given to the program and it is difficult to understand how any slaughterer, even in a small community, who was required to file the numerous reports with opa and who filed subsidy claims for 1944 and subsequent periods was unaware that subsidy payments were being made by Rfo on 1943 slaughter.
Our time of filing requirement was, of course, an administrative necessity in handling payments, but was more than administrative. The statutory authority provided for a production program, and unless the production was obtained because of the subsidy the objective of the payments was not achieved. Any slaughterer who was able to continue to produce without *111 reliance on the subsidy would not fall within the subsidy objectives and extreme delay in filing claims shows that a slaughterer was continuing to produce without relying on the subsidy. The Directors of this Corporation have determined that the consistent application of our policy as to delayed claims requires that we not make an exception to our time of filing requirements by accepting at this late date the subsidy claims of the Galen H. Clark Packing Co., Inc. for its slaughter during 1943. They have, therefore, requested me to inform you that the applicant’s protest against the non-payment of these subsidy claims is denied.
This should be considered a formal and final denial in this case from which appeal lies only to a court having jurisdiction over such matters.
24. On December 3,1950, plaintiff filed a complaint in the United States Emergency Court of Appeals in which plaintiff protested the final action of the Reconstruction Finance Corporation in denying subsidy payments for the claim period and requested the court to enter an order directing the R.F.C. to pay the sum of $38,175.41 to plaintiff for the claim period. Thereafter, routine procedures ensued in the court.
25. On September 21, 1951, plaintiff filed a supplemental brief in the United States Emergency Court of Appeals in which it was stated that in its complaint plaintiff had used subsidies for the claim period in effect on January 1, 1944, which were higher than the subsidies in effect during the claim period; so upon recalculation plaintiff amended the amount of its claim to $23,966.90.
26. An opinion of the United States Emergency Court of Appeals in plaintiff’s case against the Reconstruction Finance Corporation, filed October 19, 1951, by Maris, Chief Judge, reads as follows:
The complainant here seeks a review by this court of an order issued by the respondent on September 20,1950, refusing payment of the complainant’s claims for meat slaughter subsidy for the period from Juñe 7, 1943 to December 31,1943. The claims were not presented even informally, until October 31. 1949, and were not presented in written form until August 15,1950. Payment was refused by the respondent on the ground that the claims were time barred by the subsidy regulations and that the circumstances of the complainant’s case did not justify granting an exception to the time limitation.
*112 In the opinion filed this day in another subsidy case, Berchem v. Reconstruction Finance Corporation, No. 556, 191 F. 2d 922, this court has fully considered the subsidy regulations with respect to the time requirement for filing, the discretionary power of the respondent with respect to the payment of claims untimely filed and the extent of review by this court of this discretionary power. That discussion need not be repeated here.
Suffice it to say that the sole question which the present case presents is whether the respondent was arbitrary or capricious in refusing to pay the complainant’s untimely filed claims upon the ground that the complainant had not shown reasonable grounds for its failure to file the claims on time or undue hardship resulting from their nonpayment. We turn, therefore, to the facts shown by the affidavits submitted by the complainant and appearing in the record. These are that the president of the complainant understood that claim for said subsidy had been filed and paid, and it was not until an audit was made of his books in 1949 that he discovered that the claim had not been filed and paid. There was no showing that the complainant had suffered undue hardship as a result of the nonreceipt of the 1943 subsidy.
It is obvious that the complainant has failed to show facts which so clearly establish a reasonable excuse for failure to file its claim on time and such undue hardship resulting from their nonpayment as would stamp the respondent’s refusal to accept and pay the claims out of time as arbitrary or capricious. The mere receipt of the claims in August, 1950, for consideration and ruling did not involve an acceptance of the claims out of time for payment. Nor were they made timely by Regulation No. 11, 15 f.r. 6193, effective September 14, 1950, as the complainant argues. For that regulation is purely one of limitation and made no claim valid which was not valid before its issuance.
A judgment will be entered dismissing the complaint.
27. The subsidy rates applicable to the period from June 7,1943, to, but not including, December 25,1943 (seven days less than the claim period), were:

Cents a pound

Cattle and. calves_ 1.1
Sheep and lambs_ . 95
Hogs and pigs_ 1.3
*113 Tbe subsidy rates applicable to the period from December 25,1943 to December 31,1943 were:
Cattle: Cents a pound
(AA or Choice)_ 1.0
(A or Good)_ 1.45
(B, Commercial or Medium)_ .9
(G, Utility or Common)- .5
(Canner and Cutter)_ .5
(Bologna Bulls)_ . 5
Calves- 1.1
Sheep_ . 95
Hogs and pigs- 1.3
28. Plaintiff’s purchase records show the date of purchase, the kind of livestock purchased (cattle, hogs, calves) and the live weight at the time of purchase. In the pretrial proceedings defendant examined plaintiff’s purchase records and agreed that the number and weight of livestock shown on plaintiff’s claim statement were purchased by plaintiff on the dates indicated. The evidence establishes that the livestock which was purchased by plaintiff was slaughtered within a day or two unless the purchase took place immediately prior to a weekend, in which event the slaughter took place on the next business day. There was no evidence of the various grades of meat for which subsidy payments were claimed for cattle slaughtered after December 25, 1943; nor was there any evidence of the slaughter weights of the livestock as distinguished from the purchase weights. The evidence indicates, however, that the slaughter weights might be slightly less than the purchase weights. Plaintiff’s president testified, “We don’t keep, them standing around any longer than we have to. Once they are there we have to kill them as quick as we can. It doesn’t pay to feed them, and also because they lose weight standing there.”
29. The following table shows the kind and number of livestock purchased by plaintiff during the claim period, together with the total live purchase weight and the month of purchase.
*114 Kind Number purchased Total live purchase weight (lb.) Month
Calves.. 19 2,954 June 1943.
Hogs... 289 60,590
Cattle-191 209,046
Calves.. 14 1,985 July 1943.
Hogs... 233 48,838
Cattle-198 222,602
Calves.. 39 5,730 August 1943.
Hogs... 315 65,072
Cattle.. 200 216,792
Calves.. 32 4,336 September 1943.
325 64,027
Cattle.. 226 233,810
Calves.. 40 5,335 October 1943.
Hogs... 387 78,499
Cattle.. 192 202,263
Calves.. 43 5,840 November 1943.
Hogs... 386 82,735
Cattle-192 197,835
Calves.. 35 4,498 December 1943.
Hogs... 255 63,355
Cattle.. 135 144,528
30. On the assumption that the purchase weights of the livestock were equivalent to the slaughter weights and on the assumption that the cattle slaughtered by plaintiff during the period from December 25, 1943 to December 31, 1943, produced a grade of meat warranting an average subsidy rate of 1.1 cents a pound (the rate applicable for cattle slaughtered prior to December 25, 1943), the amount of the subsidy which could have been paid plaintiff for the claim period (June 7, 1943 to December 31, 1943) is $21,308.28.

 Since tlie evidence in this case was taken, the findings of the Trial Commissioner were reported, and the case was argued before this court and tentatively decided prior to the decision of the Supreme Court in Glidden v. Zdanok, rendered on June 25, 1962, 370 U.S. 530, we think it proper to file the report without reference to the effect of the Supreme Court’s opinions in that case.

 28 U.S.C. 1492, 2509.

 Section 2 of the regulations providing for the subsidy defined those eligible therefor. It provided in part: “Any person who has a permit or registration and whose permit or registration has not been suspended or revoked * * * may file an application.” Section 3 required that such applications be filed "after the last day of the accounting period in which the slaughter took place and before the last day of the calendar month following the end of the accounting period * *